IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

HART INVESTMENT GROUP, LLC, et al.,

      Plaintiffs,

      v.

TAYLOR VETERINARY IMAGING, LLC, et al.,

      Defendants.

Case No. 25-2552-JAR-RES

## MEMORANDUM AND ORDER

Plaintiffs Hart Investment Group, LLC ("Hart") and Alan Peel filed this action against Defendants Taylor Veterinary Imaging, LLC and Mark B. Taylor alleging violations of federal and state securities laws, and state-law contract and tort claims. Before the Court is Defendants' Motion to Dismiss or in the Alternative Transfer Venue (Doc. 6). The motion is fully briefed, and the Court is prepared to rule. For the reasons explained below, the Court denies the motion to dismiss and grants the motion to transfer this action to the United States District Court for the District of Utah.

## I.    Background

The facts alleged in this case arise out of a business dispute between cousins and involve several contracts. According to the Complaint, Plaintiff Alan Peel, who is a citizen and resident of Kansas, formed an animal teleradiology business with his cousin, Defendant Mark Taylor, who is a citizen and resident of Utah. Taylor is a veterinarian who would handle the medical side of the business, as well as generate business and negotiate agreements with clients. Peel would "handle some of the business aspects of the company, including setting up the entity,

keeping the books, and helping with operations."[1]  They formed the business—Defendant Taylor

Veterinary Imaging, LLC ("TVI")—in an Operating Agreement that became effective on April

7, 2020.  TVI's principal place of business is in Utah.  The Operating Agreement includes a Utah

choice-of-law provision, but it does not include a forum-selection clause.

After the business was formed, Taylor initiated several "changes to the ownership and

distribution structure of TVI, requiring multiple agreements and amendments."[2]  First, under a

Transfer of Business Ownership Agreement on August 1, 2020, Taylor transferred 76% of his

80% ownership to Peel to avoid violating a non-compete agreement he had with another

company.  Peel then transferred his 96% ownership (his original 20% and the additional 76%) to

Hart, a Kansas limited liability company.[3]  That agreement provided for distributions as follows:

60% of the previous month's revenue paid monthly to Taylor and 15% paid monthly to Hart.

After the Transfer of Business Ownership Agreement, the parties entered into five

additional agreements or amendments that changed ownership and distributions: (1) an

Amendment to Transfer of Business Ownership Agreement on August 7, 2020; (2) a Member

Distributions Amendment on May 10, 2021; (3) a Transfer of Business Ownership Agreement on

January 4, 2022; (4) a Transfer of Business Ownership Agreement on February 8, 2022; and (5)

an Amendment to Ownership Agreement on May 2, 2022.   In the end, Taylor owned 75% of

TVI and Hart owned 25%.  Taylor's distributions eventually became 55% of the previous

month's revenue, while Hart's distributions were 15%, and both parties were guaranteed no less

than $3,000 each month.  TVI's revenues grew to $400,000 in 2022.  In 2023, TVI's revenue

exceeded $1 million, and more than doubled in 2024.

---

[1] Doc. 1 ¶ 13.

[2] *Id.* ¶ 19.

[3] Peel is the sole member of Hart.

Throughout this period of time, Peel invested significant time and resources into the operations and bookkeeping of TVI; he did not receive a salary beyond the distributions provided in the parties' agreements. Yet, Taylor demanded more work hours from Peel, and put pressure on him to disregard his other commitments. In the meantime, Taylor began meeting with Patterson Companies ("Patterson") about a potential sale of TVI. As part of this endeavor, Ohio National Financial Services performed a valuation, valuing TVI at more than $5.3 million in June 2023.

In January 2024, Taylor made a series of representations to Peel about Patterson's interest in purchasing TVI: (1) that Patterson was not interested in purchasing TVI unless Taylor had full ownership; (2) that if Peel sold his shares to Taylor he would not lose money and he would always have a job there; (3) that Taylor would compensate Peel fairly for his ownership interest after the Patterson deal; and (4) that TVI's business was weak, so Hart's ownership interest was worth little to nothing. Taylor directed another employee to make similar representations to Peel. Peel is autistic and had a lifelong relationship with Taylor. He relied on Taylor's representations about TVI when making the decision to sell his ownership interests.

Ultimately, based on these representations, Peel signed a Redemption Agreement on January 20, 2024, selling 20% of his 25% interest in TVI to TVI and Taylor. The Redemption Agreement contains a forum-selection clause:

> This Agreement shall be governed by and construed in accordance with, the laws of the State of Utah. To the extent permitted by applicable law, each of the parties hereto hereby irrevocably submits to the jurisdiction of any Utah state court or United States federal court, in either case sitting in Utah over any suit, action, or other proceeding brought by any party hereto arising out of or relating to this Agreement, and each of the parties hereto irrevocably agrees that all claims with respect to any such suit,

action or other proceeding shall be heard and determined in such courts.[4]

After Hart sold its shares of TVI, Taylor finalized a deal to sell TVI to Patterson. Over the course of 2024, Taylor demoted Peel, and TVI eventually terminated Peel on January 10, 2025. TVI is now a multi-million dollar company that employs five veterinarians and offers services in all 50 states and Canada. Plaintiff lost millions of dollars in distributions and ownership interest due to Defendants' false and misleading representations about the value, strategy, and financial outlook of TVI before the sale to Patterson.

The Complaint alleges the following claims: (1) a violation of § 10(b) of the Securities Exchange Act of 1934;[5] (2) a violation of the Kansas Securities Act;[6] (3) a violation of the Utah Securities Act;[7] (4) fraud; (5) negligent misrepresentation; (6) breach of contract; (7) unjust enrichment; and (8) breach of fiduciary duty.[8] Defendants argue that venue in Kansas is improper because the events in this lawsuit are not sufficiently connected to Kansas, and because the forum-selection clause in the Redemption Agreement requires venue to lie in Utah.

## II.    Standards

Whether to dismiss a case for improper venue "lies within the sound discretion of the district court."[9] When a defendant challenges venue, the plaintiff bears the burden of proving that venue properly lies in the district.[10] At the motion-to-dismiss stage, a plaintiff need only

---

[4] Doc. 6-1 ¶ 4(d).

[5] 15 U.S.C. § 75i(b).

[6] K.S.A. § 17-12a501.

[7] U.C.A. § 61-1-1.

[8] Plaintiffs do not specify the law that applies to their state law claims, but the Court need not address choice of law in order to decide the issues presented in this venue motion.

[9] *Pierce v. Shorty Small's of Branson Inc.*, 137 F.3d 1190, 1191 (10th Cir. 1998).

[10] *Mohr v. Margolis, Ainsworth & Kinlaw Consulting, Inc.*, 434 F. Supp. 2d 1051, 1058 (D. Kan. 2006).

make a prima facie showing of venue.[11]  "In assessing whether a plaintiff has met [his] burden, the facts alleged in a plaintiff's complaint are taken as true, but only to the extent they are uncontroverted by the defendant's evidence."[12]  If a plaintiff pleads multiple claims, venue must be proper for each claim.[13]  The Court takes as true the allegations in the Complaint to the extent they are uncontroverted.[14]

Under Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a) a party make seek dismissal "only when venue is 'wrong' or 'improper.'"[15]  And determining whether venue is wrong or improper "is generally governed 28 U.S.C. § 1391."[16]  28 U.S.C. § 1391(b) provides:

> (b) Venue in general.—A civil action may be brought in—
>
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

On a motion to dismiss, if the Court determines that the case does not fall into one of the categories set forth in this statute, "the case must be dismissed or transferred under § 1406(a)."[17]

---

[11] Fed. R. Civ. P. 12(b)(3); *Scott v. Buckner Co.*, 388 F. Supp. 3d 1320 (D. Colo. 2019).

[12] *See Pierce*, 137 F.3d at 1192.

[13] *B-S Steel of Kan., Inc. v. Tex. Indus.*, 229 F. Supp. 2d 1209, 1223 (D. Kan. 2002).

[14] *Mohr*, 434 F. Supp. 2d at 1058.

[15] *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 55 (2013).

[16] *Id.*

[17] *Id.* at 56.

The crux of Defendants' motion is that a forum-selection clause controls venue in this matter. But neither party identifies the appropriate standards that apply when a venue motion is based on a forum-selection clause. The presence of a controlling forum-selection clause does not mean that venue in a particular court is "improper" under 28 U.S.C. § 1406(a) or Rule 12(b)(3) because a forum-selection clause does not invalidate venue if it is otherwise proper under 28 U.S.C. § 1391.[18] "[V]enue is proper so long as the requirements of § 1391(b) are met, irrespective of any forum-selection clause."[19]

Instead, a forum-selection clause "may be enforced through a motion to transfer under § 1404(a)."[20] Section 1404 provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[21] Generally, the Court reviews the following factors:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and[ ] all other considerations of a practical nature that make a trial easy, expeditious and economical.[22]

But in a case that involves a valid, mandatory forum-selection clause, district courts must "adjust their usual § 1404(a) analysis in three ways."[23] "First, the plaintiff's choice of forum

---

[18] *Id.* at 59.

[19] *Id.* at 57.

[20] *Id.* at 59.

[21] 28 U.S.C. § 1404(a).

[22] *Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010) (quoting *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991)).

[23] *Atl. Marine Constr. Co.*, 571 U.S. at 63.

merits no weight."[24]  Instead, "the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted."[25]  "Second, a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests."[26]  The parties "waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation," thus, the "court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum."[27]  Therefore, "a district court may consider arguments about public-interest factors only."[28]  And, "[b]ecause those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases."[29]  "Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations."[30]

## III.    Discussion

### A.    Motion to Dismiss for Improper Venue

On Defendants' motion to dismiss, the Court must consider whether Plaintiffs make a prima facie showing of proper venue for each of their claims.  The parties agree that the issue turns on whether a substantial part of the events or omissions giving rise to each claim occurred

---

[24] *Id.*

[25] *Id.*

[26] *Id.* at 64.

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.*

in Kansas as required by 28 U.S.C. § 1391(b)(2).  Under this provision, the Court must first "examine the nature of the plaintiff's claims and the acts or omissions underlying those claims."[31]  Then, the Court must "determine whether substantial 'events material to those claims occurred' in the forum district."[32]  "The substantiality requirement is satisfied upon a showing of 'acts and omissions that have a close nexus' to the alleged claims."[33]  The Court notes that under § 1391(b), "venue is not limited to the district with the *most* substantial events or omissions."[34]

Plaintiffs identify the following factual allegations to demonstrate a prima facie showing of venue: Taylor reached out to Peel in Kansas to start TVI, Peel and Hart are Kansas citizens and residents, Defendants' misrepresentations were aimed at Peel and Hart in Kansas, the parties entered into multiple contracts with Plaintiffs in Kansas, TVI paid Peel and Hart distributions in Kansas, and TVI employed and later terminated Peel in Kansas.  Plaintiffs also identify the many communications between the parties by phone and email while Plaintiffs were located in Kansas. Defendants argue that the claims based on misrepresentations, acts, and omissions all occurred while Defendants were in Utah, TVI is a Utah LLC, and any interest or monetary distribution to Plaintiffs would come from Utah.  Thus, Defendants argue that Kansas is not the proper venue for this action.  Below, the Court considers Plaintiffs' specific claims and their nexus to Kansas.

### 1.    Securities Fraud, Fraud, Negligent Misrepresentation, and Breach of Fiduciary Duty Claims

These claims are all based on alleged misrepresentations made or directed by Taylor to Peel that induced him to sell Hart's ownership stake in TVI to Taylor.  The Complaint alleges

---

[31] *Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1166 (10th Cir. 2010)

[32] *Id.* (quoting *Gulf Ins. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005)).

[33] *Id.* (quoting *Gulf Ins*, 417 F.3d at 356).

[34] *Id.* at 1165.

that the misrepresentations were made by email, Zoom, and phone to Peel when he was located in Kansas. "Numerous courts have found that venue for a fraud claim properly lies in the district to which the alleged misrepresentations were directed."[35]  Based on the allegations in the Complaint, the Court finds that even if it is true that a substantial portion of the events giving rise to Plaintiffs' claims stemming from these alleged misrepresentations and omissions occurred in Utah, they also substantially occurred in Kansas.[36]

### 2.    Breach of Contract and Unjust Enrichment Claims

Plaintiffs' claims for breach of contract and unjust enrichment allege that he was not compensated for work performed for TVI.  On the written contract claim, Plaintiffs allege a breach of the Operating Agreement and the May 2, 2022 Amendment because Hart continues to own 5% of TVI and should have continued to receive a 15% distribution.  The unjust enrichment claim alleges that Defendants retained the benefits of Peel's work for TVI, helping to grow it to the point where it could be purchased by Patterson, yet was not paid for his efforts.

"In the context of claims for breach of contract, courts 'consider a number of factors, including where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred.'"[37]  There are no facts in the Complaint about where the Operating Agreement or the May 2, 2022 Amendment were executed or negotiated, although it is reasonable to infer that the parties negotiated and executed those agreements remotely from

---

[35] *Pillow Menu, LLC v. Super Effective, LLC*, No. 20-03638, 2021 WL 3726205, at *9 (D. Colo. Aug. 19, 2021) (collecting cases).

[36] *See Multi-Media Int'l, LLC v. Promag Retail Servs.*, 343 F. Supp. 2d 1024, 1034 (D. Kan. 2004) (finding that "[t]he contacts in this case consist entirely of oral, written, and electronic communications between both parties" located in two states, a substantial part of the events giving rise to the claims took place in each state where the parties were located).

[37] *Pillow Menu, LLC*, 2021 WL 3726205, at *6 (quoting *Biad Chili, Co. v. Cimarron Agric., Ltd.*, No. 08-967 WJ/WPL, 2009 WL 10698485, at *2 (D.N.M. Mar. 31, 2009)).

Kansas and Utah. Plaintiffs performed under the contracts in Kansas and Defendants performed in Utah. The alleged illegal breach was TVI's failure to pay Plaintiff, which occurred in Utah but was felt in Kansas. The Court finds that Plaintiffs sufficiently allege that the acts or omissions that gave rise to Plaintiffs' claims for breach of contract and unjust enrichment have a nexus to Kansas.

In sum, Plaintiff has demonstrated a prima facie case of proper venue in Kansas under § 1391(b)(2); therefore, Defendants' motion to dismiss for improper venue is denied.

### B.    Motion to Transfer Based on the Forum-Selection Clause

Next, the Court considers Defendants' motion to enforce the forum-selection clause in the Redemption Agreement, which specifies that the parties submit to the jurisdiction of Utah state or federal courts. Because Defendants can only enforce this forum selection clause on a motion to transfer,[38] the Court next considers whether transfer is warranted under 28 U.S.C. § 1404(a).

Defendants argue that the Utah forum-selection clause in the Redemption Agreement controls this dispute. Plaintiffs respond that the Court instead should apply the Kansas forum-selection clause in the August 1, 2020 Transfer Agreement, which they maintain controls because it is broader and mandatory. Plaintiffs also argue that the Redemption Agreement should not be enforced because it was procured through undue influence and fraud. The Court therefore proceeds to consider the scope and enforceability of the forum-selection clause in the parties' Redemption Agreement before turning to the modified transfer factors.

---

[38] Defendants seek venue in the federal district court in Utah. The Court acknowledges that if the forum selection clause specified a state or foreign venue, a motion to dismiss under the doctrine of forum non conveniens would be appropriate. *See Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 55 (2013).

### 1.    Scope and Enforceability of the Forum Selection Clause

Before transferring a case pursuant to § 1404(a), the district court must determine whether the forum-selection clause at issue is valid, is mandatory rather than permissible, and is enforceable.  The Court finds, and the parties do not dispute, that the forum-selection clause is mandatory.  Plaintiffs argue that the Redemption Agreement's forum selection clause does not apply to the claims in this case.  Instead, they argue that the Court should apply the forum-selection clause in the August 1, 2020 Transfer Agreement that amended the Operating Agreement.  They attach copies of both agreements to their response.[39]  The forum-selection clause in the August 1, 2020 Transfer Agreement specifies that "[a]ll filings of litigation or matters of legal dispute between the [Taylor] and [Hart] shall be made in the United States District Court for the District of Kansas in Kansas City."[40]  Plaintiffs urge that this clause requires all legal disputes between Hart and Taylor to be filed in this Court.  Defendants respond that Plaintiffs failed to attach a fully signed copy of that August 1, 2020 Transfer Agreement, so it should not be considered.  They also point out that this agreement was later amended several times according to the allegations in the Complaint.  And because the Redemption Agreement postdated the Transfer Agreement, Defendants urge it should control.

The Court agrees with Defendants that forum-selection clause in the Transfer Agreement dated August 1, 2020 does not control this dispute.  First, there is no fully executed copy of this agreement in the record.  According to the fully executed Operating Agreement that is part of the record, "[n]o modification or amendment of any provision of this Agreement will be binding on any Member unless in writing and signed by all the Members."[41]  But the copy of the Transfer

---

[39] Docs. 10-1, 10-2.

[40] Doc. 10-1, sec. 8.1.

[41] Doc. 10-2 ¶ 10.3.

Agreement attached as Exhibit A to Plaintiff's response is not signed by all parties. Second, assuming as true the facts alleged in the Complaint, the Operating Agreement was further amended or modified five times after the August 1, 2020 Transfer Agreement, and none of those subsequent agreements are in the record. Thus, the Court cannot conclude that the forum-selection clause in the August 1, 2020 Transfer Agreement governs here, given that Plaintiffs allege it was superseded. On the securities fraud, fraud, negligent misrepresentation, and breach of fiduciary duty claims, Plaintiffs allege misrepresentations made or directed by Taylor to Peel that induced Peel to sell Hart's ownership stake in TVI to Taylor. These claims clearly fall within the scope of the Redemption Agreement.[42]

Plaintiffs next argue that even if the Redemption Agreement applies to these claims, it should not be enforced because it was procured through undue influence and fraud. In the Tenth Circuit, forum selection clauses are "presumptively valid."[43] "Such clauses are unenforceable only 'if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision.'"[44] Alternatively, "a party resisting enforcement carries a heavy burden of showing that the provision itself is invalid due to fraud or overreaching or that enforcement would be unreasonable and unjust under the circumstances."[45]

---

[42] Plaintiffs admit in their response brief that "the first five counts relate to the Redemption Agreement entered into by the parties." Doc. 6 at 3. Those counts all allege that Defendants provided Plaintiffs with false information in order to induce them to enter into the Redemption Agreement. On the breach of contract claim, Plaintiffs allege a breach of the Operating Agreement and the May 2, 2022 Amendment. They provide no explanation about why the forum-selection clause in the intervening August 1, 2020 agreement would apply to that claim, or the related unjust enrichment claim.

[43] *K.R.W. Constr., Inc. v. Stronghold Eng'g Inc.*, 598 F. Supp. 3d 1129, 1136 (D. Kan. 2022).

[44] *Bowen Eng'g, Corp. v. Pac. Indem. Co.*, 83 F. Supp. 3d 1185, 1190 (D. Kan. 2015) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)).

[45] *K.R.W. Constr., Inc.*, 598 F. Supp. 3d at 1136 (alteration omitted) (quoting *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 957 (10th Cir. 1992)).

Plaintiffs fail to carry their heavy burden of demonstrating that the forum-selection clause in the Redemption Agreement is invalid due to fraud or undue influence. Plaintiffs "seeking to avoid a choice provision on a fraud theory must, within the confines of Fed. R. Civ. P. 9(b) and 11, plead fraud going to the specific provision."[46] Plaintiffs wholly fail to discuss or argue that the forum-selection clause in the Redemption Agreement was procured by fraud or undue influence; their general allegations that the Redemption Agreement was procured by fraud or undue influence do not suffice. Thus, the Court finds that the forum-selection clause in the Redemption Agreement is enforceable.

### 2. Transfer Factors

Having determining that the forum selection clause in the Redemption Agreement applies here and is enforceable, the Court turns to the modified transfer factors. As the Court previously noted, neither party correctly identified the modified framework that applies under *Marine Construction Co.* They both discuss the traditional transfer factors. But when a forum-selection clause controls, the Court gives no weight to Plaintiffs' choice of forum and does not weigh the private interest factors.[47] And Plaintiffs, not Defendants, bear the burden of showing that transfer is unwarranted.[48] Moreover, because the public interest factors "rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases."[49] The Court finds that Plaintiffs have not met their burden of demonstrating that transfer to the Utah forum specified in the Redemption Agreement's forum-selection clause is unwarranted based on the public interest factors. And the Court sees no indication in the record

---

[46] *Riley*, 969 F.2d at 957; *see also Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 519–20 (1974); *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 9 (1972).

[47] *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 63–64 (2013).

[48] *Id.* at 63.

[49] *Id.* at 64.

that this is the unusual case where the public interest factors weigh against transfer to the forum specific in the agreement. Accordingly, the Court grants Defendants' motion to transfer this matter to the United States District Court for the District of Utah.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion to Dismiss or in the Alternative Transfer Venue (Doc. 6) is **granted in part and denied in part**. The motion to dismiss is **denied**. The motion to transfer venue to the United States District Court for the District of Utah is **granted**.

**IT IS SO ORDERED.**

Dated: January 8, 2026

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE